## HAMILTON, Respondent, *v.* GREAT FALLS STREET RAILWAY COMPANY, Appellant.

[Submitted November 5, 1895. Decided December 16, 1895.]

NEGLIGENCE—*Street Railways—Pleading.*—A complaint in an action for personal injuries resulting from a collision of street cars, midway between two switches, which avers that the defendant was guilty of negligence in that it failed to switch "each of its cars to await the passage of the other," though ambiguous, and demurrable for that reason, is good on general demurrer where it sufficiently appeared from other averments that the cars were operated upon a single track, and that the negligence of the gripman to use the switches so that the cars might pass was the cause of the collision.

SAME—*Complaint—Defect Cured by Answer.*—When the ambiguity in a complaint for personal injuries lies in an averment that the defendant was negligent in that it failed to switch "each of its cars to await the passage of the other," the defect is cured by an answer which denies that the defendants were guilty of negligence in failing to switch "each, either, or any of said cars to await the passage of the other." (*Hershfield* v. *Aiken*, 3 Mont. 442; *Murphy* v. *Phelps*, 12 Mont. 531, cited.)

SAME—*Street Railways—Instructions.*—Where the negligence of the defendant street car company and its employes is put in issue by the pleadings in an action for injuries to a passenger, it is proper to charge the jury that the company is bound to exercise the utmost degree of precaution and care in every respect (such as prudent men would employ under similar circumstances) in providing for the safety and the safe transportation of their passengers while in the cars; and are liable for any neglect in this respect, however slight, either of itself or its servants acting in their line of duty, and is not open to the objection that it does not confine the jury to the grounds of negligence alleged.

SAME—*Same—Instructions Particularizing Evidence.*—An instruction which particularizes the evidence of a certain witness who testified that after the collision the plaintiff stated that she would not have been thrown off of the cars if she had not been standing up, and directs the jury to consider its credibility, though erroneous, is not prejudicial where by the same instruction the jury were also told that they were to determine whether the plaintiff so stated from all the evidence, and by other instructions, that if the plaintiff at the time of the collision was standing in the cars, and such act was not the act of an ordinarily cautious person, and she thereby contributed to her injury, she could not recover.

SAME—*Same—Instruction as to Presumption of Negligence.*—In an action for damages for personal injuries resulting from a street car collision, an instruction, that when a collision is proved a presumption of negligence arises, casting upon the defendant the burden of showing itself and employes free of negligence, and that ordinary foresight could not have avoided the collision, is proper, when considered in connection with instructions already given, that if plaintiff contributed to the accident by her own want of ordinary care she could not recover and that she was guilty of contributory

negligence if she was standing at the time of the accident and an ordinarily cautious person, under similar circumstances, would not have been so doing.

SAME—*Same—Prima Facie Evidence.*—The fact that a collision of rapidly moving electric cars occurred in broad daylight at a point where the gripmen of the respective cars could have seen one another six hundred feet or more before the collision, is *prima facie* evidence of negligence. And in such case it is proper to instruct that if there was any negligence on the part of the defendant, however slight it may have been, or that by the exercise of ordinary foresight the collision could have been avoided, the defendant was liable.

SAME—*Instructions—Incompleteness—Exceptions.*—Where the court in instructing upon the respective claims of the plaintiff and defendant are not requested to state in further detail the defendant's claim, defendant cannot, by merely excepting to the charge, make it the foundation of an assignment of error that it is indefinite or incomplete.

SAME—*Instruction and Damages.*—Where there was ample evidence that plaintiff suffered some pain and injury as a result of the accident, an instruction that plaintiff may recover from all pain and suffering which she has sustained, or in any reasonable probability will hereafter sustain, whether physical or nervous, is proper, though the complaint was indefinite, except as to uterine troubles, in its averment of permanent injuries.

SAME—*Instruction—Damages.*—An instruction that· in estimating damages the jury might consider all the various complaints of the plaintiff, such as headaches, loss of flesh and spirits, is not objectionable in that it directs the jury to find damages for all these items, where the jury were first instructed to take into consideration all testimony as to the nature of the injuries in arriving at the amount of compensation.

SAME—*Same—Same.*—Where the jury were instructed throughout upon the theory that plaintiff could only recover for such injuries as were received by the collision, it is not error to refuse to charge that the plaintiff could not recover for permanent displacement of the womb unless such displacement was occasioned by the shock received and was incurable.

SAME—*Same—Burden of Proof.*—Refusal of the court to charge, at defendant's request, that the burden of proof was upon the plaintiff to show by a fair preponderance of evidence the nature and extent of her injuries, is not reversible error where the plaintiff assumed the burden of proving her damages and the jury were charged that she could only recover for such as she did prove,—the fact that she was injured being undisputed.

SAME—*Damages—Excessive Verdict.*—In an action for personal injuries sustained in a street car collision where it appeared that plaintiff was thrown from the car striking upon her head and side sustaining injuries and displacement of the uterus and other internal organs, but that, while severely shocked, the nervousness brought about thereby, was curable, and that while the uterine and other difficulties were painful they were less troublesome than just after the accident, and were probably curable, a verdict for $20,000 is excessive and should be reduced to $7,500, or a new trial granted. (*Kennon* v. *Gilmer*, 5 Mont. 273, cited.)

### ON REHEARING.

DAMAGES—*Pleading—Married woman.*—In an action by a married woman for personal injuries she is entitled to recover damages for any impairment of her capacity, as a previously healthy woman, to earn money; and, when so injured as to cause great pain and suffering in and about the womb and back, the damages thereby resulting through impairment of her capacity to work need not be specially pleaded, but may be recovered under a general averment.

SAME—*Future effects—Instructions.*—In an action for personal injuries where proof as to certainty of future effects was impossible, and reasonable probabilities were necessarily the bases of the medical opinions, it was proper to charge that damages could be awarded for "such consequences as are reasonably likely to ensue," and all pain and suffering which she "in reasonable probability will hereafter sustain."

VERDICT—*Reduction.*—On motion for rehearing the reduction of the verdict in this case was held proper under the authority of *Kennon* v. *Gilmer*, 131 U. S. 22; *Cunningham* v. *Quirk*, 10 Mont. 462; and *Kennon* v. *Gilmer*, 9 Mont. 108.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION for damages for personal injuries. The case was tried before BENTON, J. Plaintiff had judgment below. Verdict reduced.

Statement of the case by the justice delivering the opinion.

Action to recover for personal injuries. The defendant is a corporation, operating an electric street railway line in Great Falls. After the formal allegations concerning the defendant's corporate existence, etc., the complaint alleges that the cars of the company, at the time of the accident, consisted of an observation car, with seats for passengers only, and open at the sides and front, which car was attached to a motor, and the motor was operated by an employe termed a "gripman," and that the motor cut off and obstructed the view of the passengers upon the observation car down the defendant's track; that the track was a single one, operated by means of switches; that the defendants Sibbett and Oslund were gripmen; that, on July 15th, plaintiff, with her child, was a passenger on an observation car of one of the defendant's trains then traveling eastward on Central avenue; that she occupied the right-hand front seat in the observation car; that the train proceeded along the railway track to a point on Ninth street, about opposite Third avenue north, and that a second train of defendant, consisting of a motor and an observation car, which was then coming in an opposite direction, or towards Central avenue, upon said track, "at a point about midway between two of defendant's switches, upon its said single track, and through the negligence, carelessness and recklessness of the said defendant and its said gripman in negligently, carelessly, and recklessly failing to switch 'each of said cars' to await the passage of the other, forcibly and violently collided into each other, derailing one of said cars," and that, by reason of the shock and collision, plaintiff was violently thrown from the car she was in, striking upon her head, shoulder, and side; she was rendered unconscious, sustained severe bruises about the head and

neck, and the muscles of the back, and suffered bruises and injuries in her right side, and sustained permanent injuries and displacements of the uterus and other internal organs; that prior to the collision she was thoroughly healthy, but she has suffered great mental and bodily pain since the accident, has been afflicted with nervous prostration, suffered a loss of flesh, and still suffers from bodily and mental pain by reason of the injury to her womb; and that such injury is probably incurable; and that she will suffer physically and mentally therefrom during the balance of her natural life.   She prayed for $25,000.

The answer denied specifically the averments of the complaint. The denial of the particular allegation of negligence was as follows: "They deny that either or any of defendants was or were guilty of negligence in failing to switch said train, or either of them, or otherwise; deny that through the negligence or carelessness of the defendant corporation, or either of its co-defendants, in negligently or carelessly or recklessly failing to switch each, either, or any of said cars or trains to await the passage of the other, or that any recklessness or negligence or carelessness whatever of defendants, or any or either of them, caused said cars or trains to forcibly or violently, or otherwise, collide into each other, or that defendants, or any of them, were guilty of any negligence whatever in the premises, or that said cars, or any cars, violently or otherwise, collided together; and deny that one or any or either of said cars was or were derailed," etc.   The defendant alleged that any uterine troubles plaintiff might have existed prior to the collision, and denied that plaintiff received any injuries at all by reason of any negligence on defendant's part, or that any of her injuries are incurable, or that her health has been in any way impaired or injured by any act or omission of defendant. The replication denied that the internal and other injuries of plaintiff occurred or existed at all prior to the time of the accident.   The case was tried with a jury, who awarded plaintiff $20,000 damages.   The appeal is from the judgment, and from an order denying the defendant's motion for a new trial.

*Cooper & Pigott,* for Appellant.

*Toole & Wallace* and *Leslie & Downing*, for Respondent.

The court properly instructed the jury that when a collision is proved or admitted, a presumption of negligence arises, and that it then becomes the duty of the defendant to show that in and about the collision it and its employes were free from negligence and that ordinary foresight could not have averted the collision. The defendant was a carrier of passengers for hire, owning and controlling the tracks and cars operated thereon. As respects hazards and dangers incident to the business, the law enjoins upon such carriers the highest degree of care consistent with its undertaking, and it is responsible for the slightest negligence. (*Wilson* v. *N. P. R. R.*, 26 Minn. 280; 43 Am. Dec. 354-356, notes and cases cited; *Smith* v. *St. Paul Street Ry. Co.* 16 Am. and Eng. R. R. Cases, 312; *Iron R. R. Co* v. *Mowery*, 3 Am. and Eng. R. R. Cases, 361; *N. Y. L. E. W. Ry. Co.* v. *Seboet*, 18 Am. and Eng. R. R. Cases, 163.) When a collision occurs under the circumstances under which the one involved in this action happened, the showing of it by proof, or its admission, at once raises a presumption that the defendant or its employes were guilty of negligence and that it resulted from such negligence. (*Railroad Co.* v. *Pollard*, 22 Wall. 341; *Bowen* v. *N. Y. etc. R. R. Co.* 18 N. Y. 408; *Sawyer* v. *Han. & St. J. R. R.* 37 Mo. 240; *Walker* v. *Erie Ry. Co.* 63 Barb. 260; *Meier* v. *Penn. Ry. Co.* 64 Pa. St. 225; *Toledo R. R.* v. *Beggs*, 85 Ill. 80; 18 N. Y. 534; 39 N. Y. 227.) It is particularly clear that when a passenger is injured by a train running off the track or colliding with another, evidence of the occurrence constitutes prima facie presumption of negligence on the part of the company. (*Pittsburg R. R* v. *Thompson*, 56 Ill.; *Younge* v. *Kinney*, 28 Ga. 111; 13 Am. and Eng. R. R. Cases, 10, and cases cited; Wharton on Negligence, § 661.)

HUNT, J.—The record in this case does not conform to the rules of the court. The index is wholly insufficient, in not referring to the specifications of error, or to the testimony of the various witnesses, or to the instructions, or other matters

necessarily examined in determining the case.   Much of the testimony is not reduced to a narrative form, as it should be, and the court has been put to labor that it ought to have had spared it, under the rules.   But we will notice the errors relied on, in the order in which they are presented in appellant's brief.

1. A general demurrer was interposed to the complaint. The point made by the defendants is that the collision is alleged to have taken place between two switches, and that the defendant was guilty of negligence in that it failed to switch "each of its cars to await the passage of the other," which is absurd.   But we think that, when the various averments of the complaint are taken together, it is deducible therefrom that the defendant's track was a single one, with switches, and that, by the negligence of the gripman to use the switches so that the cars might pass one another, they forcibly and violently collided with one another.   The complaint was certainly ambiguous, uncertain, and unintelligible, but no demurrer was interposed on that ground.   The general demurrer was therefore properly overruled.

2. It appeared from the evidence that defendant's line was a single track, running north on Ninth street, from its intersection on Central avenue; that there is a switch on Ninth street a few feet north of Central avenue, and another switch on Fifth avenue north, a few feet east of Ninth street, and that, going north, a car would strike a switch on Fifth avenue about 100 feet from the corner of Fifth avenue and Ninth street; that, between 4 and 5 o'clock of the afternoon of the accident, the defendant Sibbett was motorman and in control of the running of the train; that the collision occurred at a point a whole block or 600 feet away from where the motormen could see one another; that the car plaintiff was on was going at a rate of from 9 to 20 miles an hour; that the car coming was also coming at a very rapid rate; that, immediately after they struck, plaintiff was found lying on her right side, partly on her face, in the beaten roadway; that the car she was on was driven off the springs; the body was slightly

off the trucks, and a portion of the springs was broken; that plaintiff was raised to her feet, and then walked, with some assistance, to a store.

The plaintiff testified that she was 32 years of age, married, with one child, five years old; that she got on the car, and took the front seat; that she was sitting down, with her back towards the left side of the track; that the collision happened without any warning; that she felt the jar, and felt herself leaving the car; that the next thing she knew she was in a store; that she was numb all over, with pains in her leg and back; that, from the store where she went immediately after the collision, she went to her home, with the assistance of her brother-in-law; that she had fallen on her left side, felt pain after the accident in her left side, along down towards the back, and still occasionally feels such pain; that she is taking medicines now, and has felt a displacement of the womb as a result of the accident, and has been treated for that; has had headaches more or less since the accident, and that the womb trouble is continuous; that her memory is affected, and that she cannot sleep well since the accident; is nervous; has more acute pains if she stoops; feels stiff in the mornings; has not been able to do heavy household work since; that before the accident she had good health, and did all the household work; that she had been treated a few times by a physician before the accident,—once for miscarriage, once in childbirth, and once for a boil; that since the accident she has been irregular in her monthly periods; that, in hope of recovery she took a trip to California; that she has pains in her abdomen, at times acute, at other times not; that she weighed 105 pounds at the time of the trial, but that before the accident her weight was from 118 to 120 pounds; that she has been troubled with bladder difficulties since the accident, and constant constipation. Other witnesses testified that the collision was without warning; that the jar was severe enough to throw them onto the seats in front of them; that, directly after it occurred, the gripmen were quarreling with one another; that plaintiff was thrown out, and picked up in a dazed condition.

Dr. Ladd, plaintiff's physician before and after the accident, stated that he had treated plaintiff some time before this accident, for two or three days, for a gathering, in the nature of a boil, in her parts; that, immediately after the accident, he found plaintiff nervous, and unable to give an intelligible account of the accident or her physical condition; he found no external marks of any injury at that time; the next day he made a digital examination, and found the mouth of the womb lower that it ought to be, and so tender that he could not complete the examination, that the uterus was prolapsed, and that, if one were thrown from the front seat of one of the open cars on the railroad in question upon the hard beaten streets, striking upon the left side and shoulder and head, such a jar would account for the troubles he found; that, when he had treated plaintiff for the boil spoken of, there was no such condition existing as he found after this accident; that he found the womb was tipped backward slightly, and to the right side, and that the result of the trouble would be an increased tenderness, a disturbance of the menstrual functions, a disturbance of the bladder functions, and the rectum; that he had tried to restore the uterus to its position; that there had been some improvement by the use of pessaries; that plaintiff had sustained a nervous shock; that she has lost weight; and that there is a difference in her color since the accident; and that she is still suffering from the effects of the nervous shock.

When plaintiff rested, a motion for nonsuit was made, based principally upon the ground that, if the evidence introduced tended to show negligence on the part of the defendants, it was a negligence wholly different from that charged, to wit, negligence in not switching ''each of said cars,'' and hence there was a fatal variance between the allegations of the complaint and the proof introduced on the trial. This motion was correctly overruled, because, although the complaint was defective, the substantial issue of whether there was negligence on the part of the defendants in and about the collision itself was presented by the defendant's answer, and the case was tried with relation to such issue. Thus, the very facts which

the plaintiff failed to properly state were supplied by the averments of the answer, and so the defect was cured. (*Hershfield* v. *Aiken*, 3 Mont. 442; *Murphy* v. *Phelps*, 12 Mont. 531; Pom. Code Rem. § 579; Bliss, Code Pl. § 437.)

3. The appellants complain of that portion italicized by us of instruction 3 of the court: "*Among other things, the company is bound to exercise the utmost degree of precaution and care in every respect (such as prudent men would employ under similar circumstances) in providing for the safety and safe transportation of their passengers while on their cars; and for any neglect in this respect, however slight, either of itself or its servants acting in their line of duty, if such neglect result in any injury to the passenger, the railway company is liable to compensate such passenger in damages.* And if the servant of the company personally contributed, by his own neglect, to the injury, not only is the company liable, but also the servant contributing is liable as well. As the railway owes to the passenger this duty of safely carrying her, she has therefore the right to depend on the company's performing this duty; and, while ordinary care is required of the passenger to avoid injury, yet this usually consists in the passenger resigning herself to the care of the railway, obeying all the latter's reasonable regulations, and avoiding voluntary action causing an unnecessary exposure to danger." The ground of the objection is that it does not confine the jury to a consideration of the grounds of negligence, alleged in the complaint. But the instruction was correct, within the limits of the issues, and should be considered with relation to the testimony and the issues made by the pleadings, showing that the collision was the cause of the injury referred to, and that the collision was brought about by the negligence of the defendants, both in failure on the part of the gripmen to use the switches to enable the cars to pass one another, and, too obviously, by not stopping their cars in time to avert the same. (*Iron Mt. Bank* v. *Murdock*, 62 Mo. 70; *Frederick* v. *Kinzer*, 17 Neb. 366, 22 N. W. 770; Thomp. Trials, 2309.)

4. The court charged, among other things, as follows: "As

to the testimony of defendant's conductor, that plaintiff told
him (when he and another were helping her into Grove's
store) that she would not have been thrown off the car if she
had not been standing up, is for you to determine from all
the evidence whether she did so state, and also the further
fact as to whether she was standing up or sitting down when
the collision took place. In determining this, you will consider
the manner in which the witness told it, the reasonableness of
his story, the testimony of other eyewitnesses as to her posi-
tion, and the manner of her fall, the existence for any motive
for standing up, and all other evidence bearing on the ques-
tion. And, in any event, you would consider plaintiff's ac-
tion from beginning to end to determine whether there was
anything in her conduct other than what a reasonably prudent
person would have done under similar circumstances of danger
and excitement, and without which she would not have been
injured; and if you find from the evidence that, under this
rule, her conduct was not objectionable, then, if otherwise
entitled, she may recover in this action.'' The witness Bone-
steele, referred to in this instruction, was called by the plaint-
iff. His evidence went principally to establish the fact that,
at the point where the collision occurred, the gripmen could
see one another 600 feet away if both cars were coming at the
same rate of speed. He assisted plaintiff to walk a distance
of about 20 feet, to the store where she was cared for after the
accident. But on cross-examination he said that, while plaintiff
was walking from the scene of the collision over to the store,
she told him ''that she would not have been hurt if she had
not been standing up.'' He stated that he not seen plaintiff
standing up himself, but that plaintiff made the statement she
did in response to a question by the witness as to where she
was hurt. Others present heard her make make no such
statement, they say.

We think the court erred in particularizing the testimony
of Bonesteele as it did in the instruction. Such a practice,
under the Code, is mischievous in its tendency, and, unless
guarded against, easily leads to prejudicial error. Jurors are

very ready to grasp at any intimation of a court which they respect to determine them in giving much or little weight to what a witness may have said. A trial judge must therefore be very careful to avoid any expression which will warrant the jury in arguing in their deliberations that the judge has intimated that any particular witness is of doubtful credibility. But whether the plaintiff stood up or not was a substantive fact to be determined, and was fairly submitted, without any comment upon the testimony of any witness upon the trial. The jury were expressly told that they were to ascertain that material fact from all the evidence, and they were particularly charged by other instructions that if they found from the evidence that the plaintiff, at the moment of the collision, was standing in the car, or had risen to her feet, and was not seated, and that such act was not the act of an ordinarily cautious person under the same or similar circumstances, and that the plaintiff, by such act, contributed to her injury, then they should return a verdict for the defendants. Whether the plaintiff had ever stated just after the collision, and when it appears she was dazed and suffering from a violent shock, and unable to give a clear account of her injuries at all, that she would not have been thrown off if she had not been standing up, was immaterial, except as it bore upon the fact itself and the credibility of the witnesses upon the point. Considering the whole instruction, therefore, we do not think the error was prejudicial.

5. The appellants complain of the following instruction: "The court advises you that, when a collision is either proven or admitted, a presumption of negligence arises, and that it then becomes the duty of the company to show that in and about the collision it and its servants were free of negligence, and that ordinary human foresight could not have avoided the collision."

The first ground complained of is that the jury were not confined to the negligence alleged in the complaint. This is answered by our views already expressed upon the position of appellants after they had joined issue upon the question of negligence in the collision.

The next objection is that it does not state the law, either abstractly or as applied to the facts in this case. This instruction must be considered as but a part of the whole charge. The jury had been told that if the plaintiff contributed to the accident by her own want of ordinary care, and that but for such want of ordinary care on her part the accident would not have happened, she could not recover, and that if she was standing up at the time of the collision, when an ordinarily cautious person would not have been standing up under similar circumstances, she was guilty of contributory negligence. Now, by this instruction, the jury, if they found that she had not contributed to her injury, were told that a collision raised a presumption of negligence, and threw the burden upon the company to show that it did not happen by reason of any failure on its part to exercise that common degree of care and diligence which the law imposes on carriers of passengers. Considering these instructions together, there was no error, for contributory negligence was injected into the whole charge. The defendants offered no proof whatsoever in excuse of the collision. It occurred in broad daylight, at a point where the gripmen of the respective cars could have seen one another 600 feet or more before the collision occurred. The cars were traveling rapidly. No warning of any kind was given to the passengers; yet the cars collided with sufficient force to push one off its springs, loosen its trucks, and throw people forward from their seats. Under such a condition of facts, a collision is *prima facie* evidence of negligence; and unless it has appeared that the plaintiff was guilty of contributory negligence herself, so as to defeat her recovery, it devolved upon defendants to show that they acted with that high degree of skill and caution which the law imposes upon them. (*New Orleans T. & G. N. R. R. Co.* v. *Alberton*, 38 Miss. 242; *Graham* v. *Railway Co.*, 39 Minn. 81, 38 N. W. 812; *Miller* v. *Steamship Co.*, 118 N. Y. 200, 23 N. E. 462; *Furnish* v. *Railway Co.*, 102 Mo. 438, 13 S. W. 1044; *Seybolt* v. *Railroad Co.*, 95 N. Y. 562; *Walker* v. *Railway Co.*, 63 Barb. 260; *Spellman* v. *Rapid Transit Co.* (Neb.) 55 N. W. 270;

*Smith* v. *Railroad Co.*, (Minn.) 18 N. W. 827; *Meier* v. *Railroad Co.*, 64 Pa. St. 225; *Bowen* v. *Railroad Co.*, 18 N. Y. 408.)

6.  By instruction 11, the court charged the jury that if they found that if there was any negligence on the part of the defendant, however slight it may have been, or that by the exercise of ordinary human foresight the collision could have been avoided, then the defendant was liable.  This we believe to be correct, for the whole instruction relates to the collision.

7.  Instruction 14 was very long.  It charged the jury that, in its liability to all passengers, the company was held responsible for the acts of its servants in the conduct of its business, whenever such acts are done by the servants while at their posts of duty.  After generally stating this rule of law, the jury were told that if they found that the defendant, or either or both of the gripmen, were responsible to the plaintiff, they should then proceed to consider the nature of the injuries.  Thereupon the court stated substantially the contention of the plaintiff, and added these words:  "The defendant claims as to the injuries that the womb displacement and trouble previously existed, and that for none of these internal injuries or aggravations thereof are they responsible."  The appellants object to this statement of the defendants' claims as insufficient.  It was incomplete, but the court was not asked to state in further detail all of the various claims of the defendant.  A party cannot, by merely excepting to a charge, make it the foundation of an assignment of error that it is indefinite or incomplete.  (Thomp. Trials, § 2341.)

The defendants also object to a portion of the fourteenth instruction, because the jury were not properly instructed that the amount of damages recoverable in case the plaintiff suffered from an inflammation of the uterus already displaced would not be as great as if the displacement occurred by the collision and the inflammation was but incidental to such displacement.  But, without incorporating the instruction into this opinion, we think the jury were fairly told that, if the

displacement previously existed, the plaintiff could not recover as much as if it had occurred at the time of the collision.

The instruction is a proper subject of criticism by its needless length and seeming obscurity, and the number of different branches of the case that it embraces; but, when sifted out, it is not incorrect.

8.   Objection is made to the fifteenth instruction.   By this the jury were told that ''our statute allows a married woman to sue in her own name, and to recover damages for personal injuries to herself.   These damages are in their very nature somewhat uncertain of estimate, but the law imposes upon the jury the duties of endeavoring to fairly and truly determine what amount of money would compensate the injured person.

In determining this latter question, you are advised that plaintiff may recover for all pain and suffering which she has sustained, or in any reasonable probability will hereafter sustain, in consequence of the injury, whether physical or nervous, resulting from the accident itself.   Included in this is her loss of health, suffering nervous shock or prostration, any impairment of her capacity as a previously healthy woman, if she were such, to earn money.''

It is urged that plaintiff only claimed for permanent injuries to her womb.   The complaint is somewhat indefinite in its averment of the permanent injuries, except in relation to the uterine troubles; but, omitting the clause relating to plaintiff's capacity to earn money, the jury were simply directed to consider those elements of damage, present and prospective, which would naturally flow from such injuries as plaintiff claimed she received.   These elements too, entered into the proofs on the trial under the general charge of the complaint that plaintiff, ever since the accident, has suffered from nervous prostration, loss of flesh, etc.   (Sedg. Dam. § 482.)   Nor was there error in the court's assuming, under the testimony in this case, that plaintiff suffered some pain and injury as a result of the accident, for there was no evidence to deny that she did so suffer.   Indeed, the case was tried upon

the theory that, although she suffered, yet she contributed by her own act to her suffering, and that she did not suffer greatly, and was not permanently injured.

Appellants also insist that plaintiff could not recover for loss or impairment of the capacity to earn money. While it would seem, under the laws of this state, that a married woman may sue for impairment of capacity to earn money, we need not discuss that question, for our views upon the damages themselves render it unnecessary.

9. The court charged by the sixteenth instruction that, in estimating damages, they might consider all the various complaints of the plaintiff, such as headaches, loss of flesh and spirits, etc., if any, that she received, and after consideration of it all, ''having in view the previous consequence to her from the time of the injuries down to the present time, as well as such consequences as are reasonably likely to ensue in the future, the jury will award to her such sum or sums as in their opinion will fairly compensate her for all of these items of damage, not exceeding, however, the sum of twenty-five thousand dollars, the amount claimed by plaintiff in her complaint.'' The objection is that the instruction directed the jury to find damages for all these items enumerated. But this objection is not sound, for the instruction begins by advising the jury that ''in endeavoring to arrive at the amount of compensation, if any, * * * they will take into consideration all testimony as to the nature of the injuries, if any,'' etc.

10. Objections are also made to the refusal of the court to give a number of instructions. Some of these stated to the jury very clearly that the plaintiff could not recover for permanent misplacement of the womb unless they found that such misplacement was occasioned by the shock received, and was incurable. But the court, throughout its instructions, as said before, proceeded upon the theory that plaintiff could only recover for such injuries as were received by the collision, and we think sufficiently covered the point that unless they found that the uterus was injured at the time, or that a displacement

already existing was made worse, plaintiff could not recover at all for uterine troubles.

11. The court refused to charge directly that the burden of proof was upon the plaintiff to show by a fair preponderance of evidence the nature and extent of her injuries, if she received any, and, until she did so, was not entitled to recover. This was error, unless cured by other instructions substantially covering the point; but the plaintiff was required to and assumed to prove her damages, and the jury were charged that she could only recover for such as she did prove. Moreover, the fact that she was injured was indisputable and undisputed, and, as what we shall have to say concerning the extent of the plaintiff's injuries will be based upon uncontradicted testimony, we do not believe this error should work a reversal of the case.

12. Several instructions were refused bearing upon the subject of the plaintiff's contributory negligence, but, as that question was fairly submitted, we see no error in refusing the instructions offered.

13. By instruction 22, the defendants asked the court to charge the jury that they might render a general or a special verdict, under section 275, Code of Civil Procedure (Comp. Laws 1887). We are not cited to any authorities to the effect that the court ought to so charge, if requested, under our statutes. The statute seems to be directory. It has not been the usual practice to so charge juries in ordinary damage suits, and we see no error in the refusal of the court to do so in this suit.

There are several other errors alleged, but they are of minor importance, and we do not deem it necessary to treat them.

14. The principal difficulty in this suit is to fairly determine the question of damages. When the evidence was closed, by the failure of the defendants to attempt to explain the collision, in the light of the evidence of the plaintiff, the defendant company practically confessed negligence. The plaintiff unless she was guilty of contributory negligence, under the evidence, was therefore entitled to recover. Indeed,

her case was very strong in her right to some damages; but the charge of the court was not as clear as it should have been in its directions to the jury how to consider the various elements of damage upon which she relied, and to what extent a recovery might be had. We deduce from the testimony of all the physicians that plaintiff was severely shocked, but that the nervousness brought about by the shock is curable by rest and quiet and other proper treatment. We further deduce from the testimony of the physicians, including that of Dr. Ladd, who attended the plaintiff, that her uterine and other difficulties were painful, and were to a great extent brought on by the accident, but that they are considerably less troublesome now than just after the accident, and that, with care and proper treatment, they are probably curable, and that the other internal troubles will be relieved when the uterine misplacement is cured. At the time of the trial, the uterus was very slightly to the right of where it ought to be, and just tipped, and the prolapsus was very slight.

These deductions naturally lead us to a consideration of appellants' earnest contention that the damages are excessive. Exemplary damages were not asked or contemplated by plaintiff. When, therefore, we consider the amount awarded with reference to the actual injuries sustained and the pain the plaintiff suffered, we are constrained to hold that the amount found was unwarranted by the evidence, and must have been based in large part upon the idea of the punishment of the defendant company for its negligence in the collision, as well as compensation to plaintiff.

We have hesitated for some time in determining whether the case ought to be reversed by reason of the several imperfections and obscurities in the instructions heretofore alluded to; but, after close examination, we do not find the instructions inaccurate or misleading, or prejudicial upon the material matters; while there can be no doubt whatever, after reading the evidence, that plaintiff was quite seriously injured, and that the evidence warranted a verdict for certain injuries,

namely, the shock, pain, and uterine troubles.    It was decided in *Kennon* v. *Gilmer*, 5 Mont. 273, 5 Pac. 847, that courts are reluctant to interfere with the verdicts of juries on the ground of excessive damages, but that, where it is apparent that the feelings of passion and prejudice have entered into and influenced the decision of a jury, it is the duty of the court to apply a proper corrective to any unwarranted findings.    And, again, as was said in *Kennon* v. *Gilmer* : "The evidence does not support this verdict.    We cannot say that there is no evidence to support a verdict for such an amount as the plaintiff ought to recover, and this verdict and the judgment ought to be reduced to that amount."

The judgment is hereby reduced to the sum of $7,500.    It is therefore ordered and adjudged that the order of the court below overruling the motion for a new trial herein be reversed, and that a new trial be granted, unless the said respondent shall, within 30 days after the filing of the remittitur from this court in the court below, consent to release all but $7,500 of such verdict, said sum of $7,500 and costs to bear legal interest from original date of judgment; that if such consent, in writing, be filed as above required, then respondent shall recover costs of this appeal, and such motion shall be overruled, and said new trial shall be denied; and that the court below shall make such orders as shall become necessary to carry out the directions of this court.

*Remanded.*

PEMBERTON, C. J., and DE WITT, J., concur.

---

## ON REHEARING.

PER CURIAM.—1. Appellant asks for a rehearing.    The first point urged is that the court should have decided whether the plaintiff, a married woman, could recover damages "for any impairment of her capacity as a previously healthy woman, if she were such, to earn money."    We think she could. Plaintiff's capacity to earn is her own, and she is entitled to

recover for any diminution of her capacity to work that is shown to have resulted from the injury.    It is unnecessary to decide in this case whether the profits or use of that capacity belong to another—the capacity is her own and for its impairment she can recover.    (*Jordan* v. *Miadlesex R. Co.*, 138 Mass. 425; 2 Sedgwick on Damages, section 436; *Harmon* v. *Old Colony R. Co.* (Mass.), 42 N. E. 505.)

2.  It was not necessary to specially plead damages done to plaintiff by reason of any impairment of such capacity, as obviously, where a woman is injured to such an extent as to cause her great pain and suffering in and about her womb and back she will, until her recovery at least, suffer an impairment of her general capacity to earn money.    To what extent plaintiff's capacity was impaired was therefore properly submitted to the jury, as part of her general damages.    (*Texas & P. Ry. Co.* v. *Bowlin*, (Texas) 32 S. W. 918.)

3.  The court charged, among other things, that damages could be awarded for "such consequences as are *reasonably likely* to ensue in the future;" and again, "plaintiff may recover for all pain and suffering which she has sustained or in *reasonable* probability will hereafter sustain, etc." The appellant now contends that damages can only be awarded when it is rendered reasonably certain from the evidence, that damages will inevitably and necessarily result from the original injury.

In this case all testimony as to future disability consisted of expert medical opinions.    Certainty of future effects was impossible and reasonable probabilities were necessarily the bases of the opinions expressed.    Therefore to say that she could recover for suffering which she would in reasonable probability sustain, was practically to say that she might recover for suffering which she was reasonably certain to sustain.    The degree of proof would be the same in either case.

The instructions complained of are in direct accord with Sutherland on Damages, Vol. 1, p. 197; Sedgwick on Damages, sec. 172; *Swift & Co.* v. *Raleigh*, 54, Illinois App. Ct. Rep. 44; *Griswell* v. *N. Y. C. & H. R. R. Co.*, 115 N. Y., 61.

4. The appellant objects to the conditional reversal of the case, and argues that the court has no power to reduce a verdict where errors of law occurred on the trial which were prejudicial to the party against whom the verdict was rendered. The error that counsel has fallen into is, in assuming that this court found prejudicial errors. Aside from the amount of the verdict, which was excessive, it was impossible for us to say that the substantial rights of the defendant were affected. In reducing the verdict, we followed the case of *Kennon* v. *Gilmer*, 131 U. S., 22, and *Cunningham* v. *Quirk*, 10 Mont. 462, and *Kennon* v. *Gilmer*, 9 Mont. 108.

The other points suggested in the motion for rehearing are sufficiently covered by the views expressed in the original opinion. The motion is denied.

*Rehearing denied.*