LYDIA W. HARMON *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.   November 19, 20, 1895. — January 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Married Woman — Impairment of Capacity to perform Labor as Element of Damage.*

In an action by a married woman to recover damages for a personal injury, the impairment of her capacity to perform labor may be considered as an element of the damages.

TORT, for personal injuries occasioned to the plaintiff, while a passenger on the defendant's railroad, by the alleged negligence of the defendant. The declaration alleged that the plaintiff " has been wholly unable to attend to her business, which said business was that of keeping a restaurant, and was carried on under a license therefor solely by said plaintiff, who was then and there solely entitled to the profits of said business, and to her labor and services in connection therewith, or in any capacity connected with the business of keeping a restaurant, separate and unconnected with her husband, since February 29, 1892, the day of her injuries, is not able to attend to the same now, and is incapacitated from so doing in the future, and has thereby suffered great loss and damage in her business."

At the trial in the Superior Court, before *Hopkins*, J., the plaintiff testified that she was a married woman, and, at the time of the accident, was engaged in keeping a restaurant in

Boston, and had been engaged in a similar business for many years previously. The plaintiff put in evidence a copy of a certificate, dated September 16, 1891, and duly recorded in the office of the city clerk of Boston, that she was a married woman, and was doing and proposed to do business on her separate account.

The plaintiff was asked by her counsel the following question: " At the time of the accident what were your services worth? What was the market value of your services?" Upon the defendant's objection, the judge excluded the question; and the plaintiff excepted.

The plaintiff further offered to show, among other things, that she was engaged in a separate business on her own account; that she was responsible for that business, which was profitable; and that, by the loss of her care and attention growing out of the accident, she lost the business and what she put into it, amounting to about $2,500.

The offer of proof was excluded ; and the plaintiff excepted.

The plaintiff's counsel then said: " I offer to show again on this question that she was running the business separately under a married woman's license; that, as a result of her injury, she has been unable to carry on this business, which was in her own name and for her own benefit; that thereupon the business, which was valuable to her, and by which she made a large amount of money, was lost to her entirely ; that the loss of this business was due wholly to the fact that she had been unable to give her attention to it; and that, whereas she put into the business $2,500, it was sold for $400."

The judge excluded the offer ; and the plaintiff excepted.

Upon the question of damages, the judge instructed the jury, among other things, as follows:

" Now, in the case of a married woman, it cannot be said that she is entitled to recover for the same elements of damage as a man may recover for. The probability that a married woman will earn any given sum of money in the future of any event is too remote and uncertain to be relied upon as an element in the estimation of damage. So that in this case, as you will observe, in the very outset, on the offer to show by the plaintiff that her services in the market were worth a certain sum, that evidence

was excluded, so that you have not been permitted to know what the services of this woman were worth; and not having any evidence before you, of course it goes entirely out of your consideration, and you do not speculate or guess or try to determine in any wise what the services of this woman were worth in the 'market, because the law will not permit you, in your estimation of damages, to take that into consideration. . . . So that you see you will carefully exclude from your consideration, if you reach the question of damages, all speculations suggested by the evidence, or otherwise, as to any loss of time resulting to this woman from this accident, or any loss of capacity to perform labor or to carry on business from that time forth.

"I should say to you that in the declaration you will also find another averment made by her, and that is that she has been wholly unable to attend to her business, and has thereby suffered great loss and damage in her business, with a specification as to what the business was. Under the ruling of the court, no evidence has been offered upon that branch of the declaration, and under the instructions I now give you, you will of course not consider so much of the declaration as alleges any loss of business upon her part, but you will come to the simple question of what is the loss to her, what would compensate her for the mental and physical pain she has endured, which carries and involves in it an inquiry as to her loss of capacity to enjoy life."

The jury returned a verdict for the plaintiff in the sum of $2,200; and the plaintiff alleged exceptions.

*A. A. Strout & G. E. Smith*, for the plaintiff.

*J. H. Benton, Jr. & C. F. Choate, Jr.*, for the defendant.

ALLEN, J. The general question arising in this case is, whether, in an action brought by a married woman to recover damages for a personal injury, the impairment of her capacity to perform labor can be considered as an element of the damages.

By St. 1846, c. 209, § 1, it was enacted that, "In all cases where married women shall hereafter, by their own labor, earn wages, payment may be made to them for the same."

This was followed by St. 1855, c. 304, § 7: "Any married woman may carry on any trade or business, and perform any

labor or services, on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name; and she may sue and be sued as if sole in regard to her trade, business, labor, services, and earnings; and her property acquired by her trade, business, and service, and the proceeds thereof, may be taken on any execution against her."

By St. 1857, c. 249, § 6, it was provided that a husband should not be bound by his wife's contracts in respect to her separate property, or to her trade.

The rights of married women in respect to their labor are thus defined in Gen. Sts. c. 108.

" Sect. 1.   The property both real and personal which any married woman now owns as her sole and separate property, that which comes to her by descent, devise, bequest, gift, or grant, that which she acquires by her trade, business, labor, or services, carried on or performed on her sole and separate account . . . shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected, and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts."

" Sect. 3.   A married woman may bargain, sell, and convey her separate real and personal property, enter into any contracts in reference to the same, carry on any trade or business, and perform any labor or services on her sole and separate account, and sue and be sued in all matters having relation to her separate property, business, trade, services, labor, and earnings, in the same manner as if she were sole."

" Sect. 5.   The contracts made by a married woman in respect to her separate property, trade, business, labor, or services, shall not be binding on her husband, nor render him or his property liable therefor ; but she and her separate property shall be liable for such contracts in the same manner as if she were sole.

" Sect. 6.   Payment may be made to a married woman for wages earned by her labor," etc.

By St. 1862, c. 198, amended by St. 1881, c. 64, § 1, a married

woman doing business on her separate account must record a certificate in the town or city clerk's office setting forth various particulars; or her husband may file such certificate. In case of failure to do so, her property will not be protected against his creditors, and he will be liable on her contracts.

By St. 1874, c. 184, § 1; " A married woman may . . . make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, and all work and labor performed by her for others than her husband and children shall, unless there is an express agreement on her part to the contrary, be presumed to be on her separate account." And by § 3, " A married woman may sue and be sued in the same manner and to the same extent as if she were sole, but nothing herein contained shall authorize suits between husband and wife."

This enumeration of statutes shows the growth of the legislation on this particular subject, and the foregoing provisions are now embodied, in a somewhat compressed form, in Pub. Sts. c. 147.

By virtue of this legislation, a married woman becomes, in the view of the law, a distinct and independent person. from her husband, not only in respect to her right to own property, but also in respect to her right to use her time for the purpose of earning money on her sole and separate account. She may perform labor, and is entitled to her wages or earnings. If she complies with the statutory requirement as to recording a certificate, she may carry on any trade or business on her sole and separate account, and take the profits, if profits there are, as her separate property. Her right to enter into contracts, to earn money, to engage in performing labor or service, to enter into trade on her own account, is inconsistent with the view that her capacity to labor belongs exclusively to her husband. He can appropriate neither her earnings nor her time. Her right to employ her time for the earning of money on her own account is as complete as his; subject to the requirement of recording a certificate in case she enters into trade. This may interfere with his right to and enjoyment of her society and services. But this is a consequence which the Legislature must be deemed to have foreseen and intended. His right in these respects is now made subordinate to her right to employ her time in the

care and management of her property, and in the earning of money by performing labor or by carrying on a trade or business. So far as the statutes have given to her a right to act independently of him, so far his rights and control in respect to her are necessarily abridged. He can no longer compel her to work for him during such time as she may choose to perform labor on her sole and separate account.

By the common law, the husband was bound to support his wife, and therefore was entitled to her services. By the statutes, which modify the common law, his right to her services is abridged, though his obligation to support her remains.

It is urged in argument that she may contract to devote her whole time to work which is to be performed away from his home, and which perhaps may require her absence for ten years, thus amounting to a desertion, which would be in violation of her matrimonial duty. But the possibility of extreme cases should not conclusively determine the construction of statutes, nor do we now decide whether the statutes would permit such action on her part against his consent. To a certain limited extent, as, for example, in fixing the domicil, and in being responsible under ordinary circumstances for its orderly management, the husband is still the head of the family. But in some particulars a married woman is now independent of her husband's control. In the case now before us, the impairment of the plaintiff's capacity to labor was an element which might be considered by the jury in the estimate of her damages. In respect to this, as with other elements of damages, no close approximation to mathematical accuracy can in all cases be reached. In some instances, the right of a married woman to perform labor for others may have no money value. How much, if anything, should be allowed on this ground, must be left to the jury to determine, under the circumstances of each particular case.

The radical nature of the change effected by the legislation of this State in the legal condition of married women is illustrated in numerous decisions, of which *Jordan* v. *Middlesex Railroad*, 138 Mass. 425, most nearly resembles the present case in its facts. But see also *Parker* v. *Simonds*, 1 Allen, 258; *Ames* v. *Foster*, 3 Allen, 541; *Plumer* v. *Lord*, 5 Allen, 460; *Chap-*

*man* v. *Foster*, 6 Allen, 136; *Stewart* v. *Jenkins*, 6 Allen, 300; *Chapman* v. *Briggs*, 11 Allen, 546; *Burke* v. *Cole*, 97 Mass. 113; *Snow* v. *Sheldon*, 126 Mass. 332; *Read* v. *Stewart*, 129 Mass. 407; *Pacific National Bank* v. *Windram*, 133 Mass. 175; *Butler* v. *Ives*, 139 Mass. 202; *Binney* v. *Globe National Bank*, 150 Mass. 574.                    *Exceptions sustained.*