## TEXAS & P. RY. CO. v. HUMBLE.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1899.)

### No. 1,223.

1. PARTIES—ACTION BY MARRIED WOMAN.

A married woman suing in a federal court for a personal injury, in a state by whose laws she is permitted to maintain such action in her own name, cannot be compelled to join her husband as plaintiff.

2. CONTINUANCE—ABSENT WITNESS—AVOIDANCE BY ADMISSION.

It is not error for a federal court in an action at law to deny a motion for continuance on account of the absence of a witness, where the adverse party admits, in accordance with a state statute, that the witness, if present, would testify as stated in the application.

3. REVIEW ON APPEAL—MATTERS OF DISCRETION.

The action of a trial court in denying a motion for continuance cannot be reviewed on appeal or writ of error.

4. CARRIERS—INJURY TO PASSENGER AT STATION—ACTION.

Where plaintiff was injured by reason of a defective chair in the waiting room of defendant's railroad station, and there was evidence tending to show that the chair had been defective for some time, and that defend-

ant's agent had been notified of the fact, the question of defendant's negligence in not repairing or removing it was one for the jury.

**5. TORTS—LAWS GOVERNING RIGHT OF RECOVERY.**

An action by a married woman for a personal injury, brought in the state where the injury occurred, is governed by the laws of such state as to the right of recovery and the damages recoverable, regardless of the place of plaintiff's domicile.

**6. MARRIED WOMEN — DAMAGES FOR PERSONAL INJURY—LOSS OF EARNING CAPACITY.**

Under the statutes of Arkansas, which provide that property acquired by a married woman by her trade, business, labor, or services carried on or performed on her sole or separate account shall remain her own, free from any claim of her husband, and which also authorize her to maintain an action in her own name for an injury to her person, a married woman, in an action for a personal injury, may recover damages for the impairment of her earning capacity due to the injury.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Emma Humble, the defendant in error, brought this action against the Texas & Pacific Railway Company, the plaintiff in error, to recover compensation for certain personal injuries which she sustained in the defendant's waiting room or station at Texarkana, Ark., on April 9, 1898, while she was waiting to become a passenger on one of the defendant's trains. She attempted to take a seat in said waiting room in one of the chairs that had been provided for the use of passengers, but, owing to a defect in the chair, the bottom gave way, causing her to fall through the chair, and to become wedged therein until she was extricated. As a result of the accident, the plaintiff sustained serious internal injuries, which, as she claimed, and as the evidence tended to show, had permanently impaired her health and strength, and lessened her capacity to labor, besides compelling her to wear a truss to counteract the effects of a rupture. A judgment was recovered by the plaintiff in the lower court, which has been brought before this court for review on a writ of error.

F. H. Prendergast (T. J. Freeman, on the brief), for plaintiff in error.

Oscar D. Scott (Paul Jones and S. S. Solinsky, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

At the commencement of the trial in the lower court, the defendant company asked that court to require the plaintiff's husband to be made a party plaintiff, assigning as a reason for such motion that, if the plaintiff could recover for the injuries complained of, then her husband could also recover, and that it was desirable that he should be joined, to the end that all claims might be settled in one suit. The motion was denied, and an exception was saved. We perceive no merit whatever in this exception, as the suit was by the wife to recover for certain personal injuries which she had sustained, and as the laws of Arkansas, where the suit was brought, expressly provide (Sand. & H. Dig. Ark. § 5641) that a married woman "may maintain an action in her own name * * * for any injury to her person, character, or property." This statute is applicable to suits commenced in the federal courts as well as to suits brought in the courts of the state.

Association v. Smith, 1 U. S. App. 270, 275, 4 C. C. A. 8, 56 Fed. 141. Besides, as this action was originally instituted in a state court and was removed therefrom to the federal court at the instance of the defendant, it could not by such removal deprive the plaintiff of the right secured to her by local laws to prosecute the suit in her own name for her own benefit. Rev. St. U. S. § 721.

When the case was called for trial, the defendant company, in addition to the above motion, also applied for a continuance; but as the plaintiff's attorney took advantage of the provisions of the Arkansas statute (Sand. & H. Dig. Ark. § 5797), and admitted that the absent witness, if present, would testify to the facts stated in the defendant's application for a continuance, the motion was overruled. There was no error in such action. The trial court properly exercised its discretionary power. Besides, error cannot be assigned on appeal or writ of error on account of such discretionary action by the trial judge, as this court and other federal courts have repeatedly decided. Davis v. Patrick, 12 U. S. App. 629, 635, 6 C. C. A. 632, 57 Fed 909; Manufacturing Co. v. Hess (C. C. A.) 98 Fed. 56.

Complaint is next made of the refusal of the trial court to give two instructions which were asked by the defendant. These instructions were as follows:

"(1) In this case the plaintiff cannot recover, because the evidence shows that the acts of some malicious boys, for whose acts defendant is not liable, caused the plaintiff to sit in a seat that had not been prepared for her, nor for other passengers, and thereby to receive the injuries she did."

"(5) If you believe the seat in question was out of order by reason of the perforated bottom being out or hanging down, and that its condition was apparent to any person about to sit down on it, and you further believe that some boys, not in the employ of defendant, and without defendant's knowledge or consent, went a short time before the accident, and fixed the perforated bottom into the frame of the seat so that it would appear to be in good condition, and this was done for the purpose of deceiving persons and making them believe the seat was in good condition, and the plaintiff was deceived by its then appearance, and induced to sit in the seat by reason of being thus deceived, then the defendant would not be liable."

The first of these instructions was properly denied, because it assumed that an act committed by some mischievous boys was the proximate cause of the injury, without submitting that issue to the arbitrament of the jury. The only evidence contained in the record which tended to afford a basis for the foregoing instructions was the testimony of one witness to the effect that the chair in question had been out of repair for some time, and that certain small boys on some previous occasions had fixed the seat so as to make it appear all right, and then induced their unwary playmates to sit down in it and receive a fall. There was no evidence, so far as we are able to discover, which would have warranted the court in instructing the jury as a matter of law, as it was asked to do in the first of the above instructions, that the fall of which the plaintiff complained was induced by the malicious act of a stranger, rather than by the neglect of the defendant company. There was abundant evidence to the effect that the chair had been out of repair in the waiting room for a long time; that it was in such a condition as to prove a trap for the unwary; and that the station master had been notified of its condition, and had

taken no steps to remove it or to have it repaired. In view of this testimony, it is manifest that the first instruction should not have been given.

The other instruction was also erroneous, in that it assumed that there was some evidence before the jury tending to show that the bottom of the chair was out or hanging down, and that the defect therein was obvious to every one when the plaintiff attempted to sit down. We find no evidence to that effect, but, on the contrary, we do find testimony which tended to show that it appeared to be in a suitable condition at the time of the accident. Besides, the instruction utterly ignored an obligation which rested on the defendant company either to remove the chair from its waiting room or cause it to be repaired when it had notice of the defect therein and the tricks which boys were in the habit of playing on each other. It was the province of the jury to decide whether the defendant was not guilty of some negligence, directly contributing to the injury which the plaintiff sustained, in permitting the chair to remain for a long time in its waiting room with knowledge of its condition and the use that was being made of it by boys to deceive unsuspecting persons. In view of the testimony in the case and the form of the instruction, it was clearly erroneous and properly refused.

The next and most important question in the case is whether the trial court erred in instructing the jury that, if the finding was for the plaintiff, they might, in assessing the plaintiff's damages, "take into consideration her age and earning capacity before and after the injury was received, as shown by the proofs." This direction is said to have been wrong, because the plaintiff was thereby allowed to recover for a loss of her earning capacity, which was an injury, as it is claimed, on account of which the husband alone is entitled to demand compensation. It is further said that the husband was especially entitled to recover for the loss of the wife's earning capacity in the case at bar, because he had taken up his abode in the state of Louisiana shortly prior to the accident, under whose laws a claim for damages for an injury to the wife is community property, which must be sued for by the husband and the wife. The plaintiff in the case at bar, as the evidence shows, had resided in the state of Arkansas, where she was hurt, for more than 10 years prior to the injury, but she was on her way to Shreveport, La., to join her husband, when the injury was sustained. Now, assuming it to be true, although the fact was not pleaded, that the plaintiff's husband had taken up his abode in the state of Louisiana shortly before the accident, and that the laws of that state make the damages claimed community property, and entitle the husband to join in a suit for their recovery in that state, the inquiry arises whether by virtue of these facts the plaintiff's rights, when she sued in the state of Arkansas for an injury there sustained, differed in any respect from those of a married woman domiciled in that state. We think that this question should be answered in the negative. The laws of Louisiana cannot be allowed to have any extraterritorial effect in a case of this character. It was competent for the legislature of the state of

Arkansas to determine, as it has done, by whom a suit may be brought for personal injuries sustained by a married woman, and the legislative direction on that subject must be observed in all suits which are commenced in that state. It was equally competent for the legislature to enlarge the rights of married women so as to work a change in the kind and amount of damages recoverable by them on account of personal injuries sustained within the state; and such laws, when enacted, necessarily inured to the benefit of every married woman who subsequently sued in the courts of the state for personal injuries there sustained. It sometimes happens that the measure of damages for the same wrong is not the same in one jurisdiction as in another; but it has never been supposed that the courts of one state, when appealed to for relief by a nonresident, are bound to apply the rule for the admeasurement of damages which prevails in the nonresident's place of abode if it differs from their own. It is clear that the rule in vogue in another jurisdiction ought not to be applied when, as in the case at bar, the tort was committed, not in the foreign jurisdiction, but within the state whose courts are asked to afford redress for the alleged wrong. In short, the laws of a state, whether statutory or the result of judicial decision thereon, should have a uniform operation throughout the state, whether the protection thereof is sought by a citizen or a stranger; and this principle should be enforced especially in actions to obtain redress for an injury to the person, character, or reputation of the plaintiff committed within the state. The same damages should be awarded for the wrong, whether the action is by a citizen of the state or a nonresident, since, by appealing for relief in an action that is transitory and may be brought anywhere, the plaintiff necessarily elects to take that measure of relief which the chosen forum affords to its own citizens, and becomes subject alike to the advantages and disadvantages which ensue from his choice of a forum.

It results from what has been said that the substantial question in the case is whether, under the laws of Arkansas, a married woman, when suing for a personal injury there sustained, is entitled to recover as a part of her damages for a loss of earning capacity incident to the injury. The statutes of that state provide, as heretofore shown, that she may maintain a suit in her own name for an injury to her person, character, or property. They further provide, in substance (Sand. & H. Dig. Ark. §§ 4940, 4945), that both the personal and real property of the wife, acquired either before or after her marriage, shall be and remain her separate estate and property, and may be disposed of as if she were a feme sole. They also declare that property of all kinds which comes to a married woman by gift, bequest, or descent, and that which she acquires by her trade, business, labor, or services carried on or performed on her sole or separate account, and the rents, issues, and proceeds of all such property, shall remain her own, and may be used, invested, and disposed of by her as she deems best, free from the control of her husband and without liability for his debts. Herein is found a clear authority, by in-

ference, for a married woman to engage in trade or in any business which she may elect to pursue, the same as a feme sole, and to hold whatever property she may thus acquire as her own, free from the control or interference of her husband. The question does not appear to have been decided by the local courts whether, in view of the aforesaid statute, a married woman suing for a personal injury in the state of Arkansas may lay claim to compensation for a loss of earning capacity; but it seems to us to follow logically from the authority given to her to carry on any business as a feme sole, and to appropriate the proceeds of her labor, that a loss of earning capacity incident to a personal injury is a loss for which a married woman is entitled to demand reasonable compensation from the wrongdoer. As she is entitled to enjoy the fruits of her own labor without participation by the husband, a wrongful or negligent act which lessens her capacity to labor inflicts a loss on account of which she should be entitled to recover, as well as for the pain and suffering which was occasioned by the injury. The precise question here involved has recently undergone judicial consideration in the state of Massachusetts, whose laws concerning the rights of married women are substantially the same as in the state of Arkansas. Harmon v. Railroad Co., 165 Mass. 100, 104, 42 N. E. 505. It was there held, in substance, that the right conferred on married women by the statutes of that state to engage in trade and business on their own account, and to enjoy the fruits of their own labor, is inconsistent with the theory that a married woman's capacity to labor belongs exclusively to her husband, and, as a corollary from that proposition, it was decided that, in an action by a wife for personal injuries, the jury were entitled to consider to what extent, if any, the injury sustained had impaired her capacity to labor. The supreme court of Montana appears to have adopted a similar view in Hamilton v. Railway Co., 17 Mont. 334, 42 Pac. 860, and 43 Pac. 713. See, also, Jordan v. Railroad Co., 138 Mass. 425. Moreover, in the case at bar, there was evidence which showed that before the plaintiff was injured she had been engaged for several years in running a hotel and boarding house, which occupation was pursued as her sole and separate business. There was further testimony to the effect that she had discontinued the business aforesaid shortly prior to the accident, owing to a temporary illness, and had not been engaged in any business since then, owing to her enfeebled condition, which had incapacitated her from doing any work except such as could be done while she was sitting down. In view of what has been said, we are of opinion that no error was committed by the trial judge in permitting the jury to consider the plaintiff's earning capacity before and after the accident, for the purpose of arriving at a just assessment of the damages. She was entitled to some allowance on this account, if the proof showed that her capacity to labor had been impaired by the injuries which she had received, since it cannot be maintained, under such laws as prevail in the state of Arkansas, that a wife's capacity to labor is the exclusive property of her husband. It is certain

that no such doctrine ought to be tolerated in a case where it appears that previous to the injury the wife had carried on business in her own name and for her own benefit. Finding no error in the record, the judgment below is hereby affirmed.

SANBORN, Circuit Judge (dissenting). The question presented in this case has been the subject of much discussion and of conflicting decisions, but, under the statutes of Arkansas, the logical result seems to me to be that the husband may, and the wife cannot, recover for the loss of the wife's services, or for her diminished capacity to labor, which is the same thing. The husband is still the head of the family in Arkansas. He is liable for the support of the family, and lawfully entitled to services from his wife in that regard, and he necessarily loses through the impairment of her capacity to labor. The authorities cited in the majority opinion seem to rest on a supposed distinction between loss of service and diminution of the capacity to labor, and to hold that the husband may recover for the former and the wife for the latter (Hamilton v. Railway Co., 17 Mont. 334, 42 Pac. 860, and 43 Pac. 713; Harmon v. Railroad Co. [Mass.] 42 N. E. 505; Jordan v. Railroad Co., 138 Mass. 425), but there is and can be no practical distinction between them. The loss of service is the measure of the impairment of capacity and the proof of it, and to permit the husband to recover for the loss of service, and the wife for impairment of capacity to render it, is to allow two recoveries for the same damages. We have already held that, under the Arkansas statutes, the husband may recover for the destruction of the wife's capacity to labor and the loss of her service resulting therefrom. Railway Co. v. Henson, 7 C. C. A. 349, 58 Fed. 531, 533. To my mind, this was to hold that the wife could not recover for them, and I think that this is the true rule, and that it is in accord with the weight of authority. Railway Co. v. Stone (Kan. Sup.) 37 Pac. 1015; Blaechinska v. Howard Mission (N. Y.) 29 N. E. 755, 15 L. R. A. 215; Filer v. Railroad Co., 49 N. Y. 47; Tuttle v. Railroad Co., 42 Iowa, 518, 521. My conclusion is that her earning capacity was not a proper element of the damages of the married woman in this case, and that the judgment ought to be reversed for that reason.