IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1901.

---

MARY HEALEY AND JOHN HEALEY, DEFENDANTS IN
ERROR, v. P. BALLANTINE & SONS, A CORPORATION,
PLAINTIFF IN ERROR.

Argued February 19, 1901—Decided June 10, 1901.

1. The plaintiff Mary Healey, while walking along the sidewalk in a
street in the city of Newark, was kicked by a horse of the defend-
ant, which a servant was leading by a halter on the sidewalk. For
the personal injuries she sustained, this suit was brought, and re-
sulted in a verdict for the plaintiffs. It was neither alleged in the
declaration nor proved at the trial that there was any mischievous
propensity on the part of the horse. The contention of the defence
was that in order to allow the plaintiffs to recover damages for
the personal injuries sustained, a vicious or mischievous pro-
pensity on the part of the animal must be shown and the *scienter*
established. The trial judge charged the jury that this proposition
was not the law as applied to this case.
2. Riding, driving or leading a horse on a public sidewalk is unlaw-
ful, and the negligence which will make the owner liable for dam-
ages done by it consists in the fact that the horse was voluntarily
permitted to be upon the sidewalk, where it had no right to be.
In such a case the owner will be liable in damages for an injury
sustained by one who was lawfully using the sidewalk.

339

3. The distinction is this : If domestic animals are rightfully in the place where they do the injury complained of, the owner will not be liable unless he had knowledge of the vicious propensities of such animals, and in an action for such injuries, knowledge on the part of the owner must be alleged and proved. But when a horse is where it should not be, and kicks, the kicking is not so far remote from what is to be expected from the natural disposition of horses that the injury cannot be said to follow in the natural and obvious sequence from the original wrongful act which allowed the horse to get where an opportunity of doing injury is given.

4. This suit was by the wife to recover damages for her personal injuries ; the declaration also contained a count by the husband for consequential damages. The trial court admitted evidence that the married woman was carrying on business for herself, selling notions of all kinds by peddling them from house to house, and the amount that she earned in that way. *Held,* that that testimony was competent under section 4 of the Married Women's act, which enacts that the wages and earnings of any married woman, acquired or gained by her in any employment, occupation or trade in which she is employed, and which she carries on separately from her husband, and all investments, &c., shall be her sole and separate property.

5. A personal injury which disqualifies a married woman from carrying on the business in which she is engaged, vests in her the right to recover damages sustained by her in respect to her separate business. The impairment of her capacity to perform labor may be considered as an element of the damages, since the husband's right to recover for loss of services does not preclude her right to recover for the loss of her capacity to earn for herself.

6. The distinction is between the effort to award the wife damages for loss of service to her husband in his household in the discharge of her domestic duties, and the loss of ability to make earnings outside of the household duties and irrespective of the husband, especially where the married woman is engaged in carrying on any business on her own account.

On error to the Essex Circuit.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *C. Lincoln De Witt* and *Grant C. Fox* (of the New York bar).

For the defendants in error, *Benjamin M. Weinberg* and *Samuel Kalisch.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This was a suit by husband and wife to recover damages for an injury done to the wife, Mary Healey, who, on October 14th, 1898, was walking along the sidewalk on Christie street, a public street in the city of Newark. While she was in the lawful use of the street a horse of the defendant was being led along the sidewalk by a halter by a servant of the defendant. The horse had no other harness. The plaintiff testified that she came from Ferry street into Christie street, and walked along the sidewalk on Christie street; that on the outer edge of the sidewalk and running parallel with Christie street is a wooden railing separating the sidewalk from the street; that while she was walking along the sidewalk she saw a man leading a horse by a halter coming towards her on the sidewalk; that as the man and horse approached her she attempted to get out of the way of the horse by going a little further out towards the railing, when the horse kicked her. For the personal injuries she sustained this suit was brought, and resulted in a verdict in favor of the plaintiffs for personal injuries to the wife and for the damages sustained by the husband. There is no controversy as to the manner in which the accident happened.

The plaintiffs neither allege in the declaration nor proved at the trial any mischievous propensity on the part of the defendant's horse. The contention on the part of the defence was that in order to allow the plaintiffs to recover damages for the personal injuries, a vicious or mischievous propensity on the part of the animal must be shown and the *scienter* established. This question was raised first on motion to nonsuit, which was denied and exception taken. The learned judge, in his charge to the jury, dealt with this subject as follows: "It is said by the defendant that the plaintiffs ought to prove to you that the defendant knew that the horse had this vicious propensity—in common language, that the defendant knew that the horse was a kicker. I charge you that that is not the law, and that it is not necessary, in order for the plaintiffs to recover, for them to show that the defendant corporation knew of this bad propensity, if it

was a bad propensity, of the horse. You have the right to consider, as a matter of common observation, that horses will kick, and that even a kind and gentle horse will, on occasion, kick. Now, having that in view, and remembering the situation of Christie street, as far as you have it from the evidence, did the stableman act negligently and carelessly in leading the horse along the sidewalk so near to the plaintiff Mary Healey that the horse could reach her with his hoofs?" To this instruction exception was also taken, and errors have been assigned accordingly.

To sustain the contention of the defendant's counsel, reliance is placed on *Cox* v. *Burbridge,* 13 *C. B.* (*N. S.*) 430. In that case it appeared that the defendant's horse, being on a highway unattended, kicked the plaintiff, a child who was playing there; there was no evidence to show how the horse came on the spot, or what induced him to kick the child, or that he was accustomed to kick. It was held that there was no evidence from which a jury would be justified in inferring that the defendant had been guilty of actionable negligence. The familiar doctrine of the common law is that the owner of a domestic animal is not responsible for an injury done by it unless he has knowledge of the propensity or vice which induces the animal to do the injury, or has been guilty of some actionable negligence. The court, in disposing of the case, dwelt mainly on the fact that there was no evidence of an actionable wrong on the part of the owner of the animal. Chief Justice Earle said: "To entitle the plaintiff to maintain the action it is necessary to show a breach of some legal duty due from the defendant to the plaintiff; and it is enough to say that there is no evidence to support the affirmative of the issue that there was negligence on the part of the defendant for which an action would lie by the plaintiff. The simple fact found is that the horse was on the highway. He may have been there without negligence of the owner; he might have been put there by a stranger, or might have escaped from some enclosed place without the owner's knowledge. To entitle the plaintiff to recover there must be some

affirmative proof of negligence in the defendant in respect of a duty owing to the plaintiff."

In a later case (*Lee* v. *Riley,* 18 *C. B.* (*N. S.*) 722), through a defect of fences, which it was the duty of the defendant to repair, his mare strayed in the night-time from his close into an adjoining field, and so into the field of the plaintiff's in which was a horse; from some unexplained cause the animals quarreled, and the result was that the plaintiff's horse received a kick from the defendant's mare which broke his leg, and he was necessarily killed. It was held that the defendant was responsible for his mare's trespass, and that the damage was not too remote. In that case there was no proof that the defendant's animal was vicious. The liability of the defendant was put upon the ground that the animal was trespassing on the plaintiff's close, and that the foundation of the cause was negligence on the part of the defendant in neglecting properly to keep up his fences, by means of which his mare strayed from his close and injured the horse. Chief Justice Earle sat in both of these cases and took part in the decision of each. In *Ellis* v. *Loftus Iron Co., L. R.,* 10 *C. P.* 10, the defendant's horse injured the plaintiff's mare by biting and kicking her through the fence separating the plaintiff's land from the defendant's. It was held that the defendant was liable in damages, apart from any question of negligence on its part. The ground of that decision is stated in the opinion of Mr. Justice Keating to be this: "The horse, it is found, kicked and bit the mare through the fence. I take it that the meaning of that must be that the horse's mouth and feet protruded through the fence over the plaintiff's land, and that would, in my opinion, amount in law to a trespass."

In *Hammack* v. *White,* 11 *C. B.* (*N. S.*) 588, the defendant was riding a horse which he had recently bought, and took him out to try him. From some unexplained cause the horse became restive, and notwithstanding the defendant's well-directed efforts to control him, ran upon the pavement and killed a man. It was held that these facts disclosed no evidence of negligence which the judge was warranted in

submitting to the jury. But the court expressly rested that result on the fact that the defendant had used his utmost efforts to prevent the animal from getting on the pavement. Mr. Justice Williams, in delivering judgment, said: "It is said that, *prima facie,* the defendant was guilty of negligence because he was wrongfully on the foot pavement; but the fact of his being on the foot pavement is nothing unless he was there voluntarily; and to say the least, it is quite as consistent with the facts proved that he was there involuntarily as that he was there by his own mismanagement." Mr. Justice Willes said: "The circumstance which very much weighed with me was that here was a man riding on the foot pavement, and, therefore, *prima facie,* in the wrong. But then it must be remembered that the witness who proved that fact proved that he was there against his will; that the horse showed some symptoms of running away and that the defendant was doing his best to hold him in, and in fact doing all he reasonably could to prevent the accident. He was there by the will of a horse which was running away with him and resisting his efforts to restrain him." Mr. Justice Keating said: "If the evidence had shown that this horse was a quiet and manageable horse, and that the deceased, at the time he met with the injury which resulted in his death, was walking on the foot pavement, I must own I should have thought that there was, *prima facie,* enough to call upon the defendant to show that he had used due care and skill, because then it would have been more consistent to assume that the accident arose from his want of care and skill. But here the evidence gets rid of that difficulty."

Mr. Beven, commenting on these cases, used this language: "Although when a horse is in a place where it has a right to be, any disposition to kick that it may suddenly manifest does not import a liability on its owner; when the horse is where it should not be, and kicks, the kicking is not so far remote from what is to be expected from the natural disposition of horses that the injury cannot be said to follow in the natural and obvious sequence from the original wrongful act which allowed the horse to get where an opportunity of

doing injury is given." 1 *Beven Negl.* 97. The same principle is laid down in 2 *Am. & Eng. Encycl. L.* (*2d ed.*) 364 in these words: "If domestic animals are rightfully in the place where they do the injury complained of, the owner will not be liable unless he had knowledge of the vicious propensity of such animals; and in an action for such injuries, knowledge on the part of the owner must be alleged and proved."

In *Dickson* v. *McCoy*, 39 *N. Y.* 400, which was an action for an injury to the plaintiff by the horse of the defendant, the plaintiff, a child of ten years, was passing the stable of the defendant upon the sidewalk of a populous street in the city of Troy, when the defendant's horse came out of the stable, going loose and unattended, and in passing kicked the plaintiff in the face. The defendant moved for a nonsuit on the ground that there was no proof that the horse was vicious, which was refused. He also requested the court to charge that there was no proof that the horse was possessed of any vicious propensity or mischievous habit which required the defendant to exercise special care over him, which the court declined to charge. The court did charge that "it was for the jury to find under the evidence whether the defendant was or was not guilty of negligence in permitting the animal which did the injury complained of to run at large, as detailed by the witnesses on the part of the plaintiff." The plaintiff had a verdict and judgment, which were sustained in the Court of Appeals. The opinion of the court in that case was delivered by Mr. Justice Dwight. In the course of his opinion the learned judge used this language: "I agree with the counsel for the defendant that there is no proof in the case to sustain the allegation in the complaint that this horse was vicious and accustomed to attack and injure mankind. The fact that a horse is young and playful, that he kicks in the air, and runs and gambols when loose in the streets, is no proof of a malicious or vicious disposition. But I regard the allegation as unnecessary, and the absence of proof on the point as not affecting the right to recover. The finding of the jury, under the charge of the court, was clearly to the effect that the defendant was guilty

of negligence in suffering his horse to go at large upon the sidewalk, as shown in the case. And there was a sufficient allegation to that effect in the complaint. It is not necessary that a horse should be vicious to make the owner responsible for injury done by him through the owner's negligence. The vice of the animal is an essential fact only when, but for it, the conduct of the owner would be free from fault. If the most gentle horse be driven so negligently as to do injury to persons or property, the owner or driver will be responsible. Certainly not less so if the horse be negligently turned loose in the street without restraint or control. The motion for a nonsuit was properly denied. The only question in the case was that propounded by the court to the jury, 'Was the defendant guilty of negligence in permitting the horse to go at large in the street?'" The fact that a horse was in the street unattended shows negligence, and the burden is on the person in charge of the horse to show that he used all proper means to prevent it from escaping, and that he was without fault. *Doherly* v. *Sweetser*, 82 *Hun* 556. If the owner of a horse suffers it to go at large in the streets of a populous city, he is answerable for a personal injury done by it to an individual, without proof that the owner knew that the horse was vicious. *Goodman* v. *Gay*, 15 *Pa. St.* 188; see, also, *Fallon* v. *O'Brien*, 12 *R. I.* 518.

In *Barnes* v. *Chapin*, 4 *Allen* 444, which was an action of tort for the value of a colt kicked and killed by the defendant's mare, it appeared that the plaintiff was leading his mare in the highway by a bridle, and her sucking colt three weeks old was near her unfastened, and the defendant's mare, which had been turned loose in the highway, ran up and chased the colt and kicked and killed it. There was no evidence that the defendant's mare was vicious, and there was a verdict for the plaintiff, and that verdict was sustained by the court. Chief Justice Chapman stated the general doctrine of the common law as to injuries done by domestic animals, that the owner is not liable unless he has been in some fault; but the fault of the defendant which gave rise to this recovery was held to be in permitting his mare to go

at large upon the highway without a keeper. In *Baldwin* v. *Ensign,* 49 *Conn.* 113, which was an action of trespass on the case for an injury from a colt belonging to the defendant, the facts were these: The defendant let loose a mare and colt belonging to him on the public highway, not keeping any watch or guard over them; the plaintiff, a child about three years years of age, was near his father's house, and was injured by a kick from the colt. It was not found in the case that the colt was vicious, or, if so, that such viciousness was known to the defendant. Judgment for the plaintiff was sustained, the court saying: "It remains to inquire whether the fact that the accident happened in the limits of the highway would change the result? Why should it? The plaintiff had a lawful right to be there, as much so as to be on his own land, and the colt was unlawfully there. It is true he was not trespassing on a private enclosure, but he was at large on a public highway contrary to law, and as such was a nuisance. * * * The ground of liability for injuries of this kind is negligence, and, ordinarily, where there is no negligence, there is no liability. * * * If the animal is not accustomed to do mischief, and is where he rightfully belongs, and does an injury, there is no negligence and no liability. But if he allows him to trespass on others, or if he knowingly suffers him to be where he has no lawful right to be, that is negligence, and if the natural and probable consequence is injury to others, he is liable. In this case the plaintiff was injured without fault or negligence on his part; the injury was the result indirectly, but not too remotely of the defendant's negligence. If the defendant was not liable it is an anomalous case." *Cox* v. *Burbridge, supra,* was commented upon by the court in its opinion, and distinguished from the case in hand on the ground that in the latter case it appeared that the mare and colt were on the highway through the fault of the defendant. In an action to recover for personal injuries received by the plaintiff, a boy four or five years old, from the kick of the defendant's horse, it was held that the fact that the horse was unattended and unharnessed in the street was evidence of

negligence which would make the owner responsible in damages. *Marsland* v. *Murray,* 148 *Mass.* 91.

Mr. Wood, commenting on the case of Cox *v.* Burbridge, says: "The doctrine of this case does not commend itself to the courts or profession as being consistent with reason or sound policy. The horse was unlawfully in the highway; the child was lawfully there, and there seems to be no good reason why the owner or keeper of the horse should not be responsible for the injuries inflicted upon the child while the horse was so unlawfully at large." *Wood Nuis.* 190. Judge Redfield, in discussing the case of Cox *v.* Burbridge, says that that case "has created some discussion in England and provoked some unfriendly criticisms, as it seems to us not altogether without reason. It seems almost incomprehensible that anyone should require proof that the owner of a horse was made aware of its propensity to do damage when running at large in the highway. If the horse was wrongfully in the highway and did damage in consequence to any person or thing rightfully there, the owner or keeper should be responsible, as it seems to us." 4 *Am. L. Reg.* (*N. S.*) 140, 141.

It may safely be asserted that the decision of that case was contrary to the great weight of authority in this country, and it seems to us not sustained on principle or by preceding authority in England. The case of Cox *v.* Burbridge is, however, so clearly distinguishable from this case that if recognized as authority, it would be inapplicable in this instance. In that case it was assumed by the court and made the groundwork of decision that there was no evidence of an actionable wrong on the part of the owner of the animal; that it may have been in the street without any negligence of the owner, or might have been put there by a stranger, or might have escaped from some enclosed place without the owner's knowledge. In the present case the defendant's horse was in charge of a servant, for whose acts and negligence the defendant is responsible. The trial court charged the jury that the defendant "would have a right to cross that sidewalk with its horses, going in and out of the stable, to

and from the public street. But it is undisputed in this case that the horse was not crossing the sidewalk, being led from the roadway into the stable, but was being led along the sidewalk; and it is uncontradicted that at the time this occurrence happened the horse was about half way between the opening leading from the street to the stable and the corner of Ferry and Christie streets." The court also instructed the jury that the plaintiffs could only recover by establishing by a preponderance of the testimony that the servant of the defendant was in some way careless and negligent at the time.

Riding or leading a horse along the sidewalk is a nuisance; for such an unlawful use of the sidewalk, an indictment would lie. It was assumed by the English judges, in their opinions in *Hammack* v. *White, supra,* that riding and driving on the sidewalk as a voluntary act was unlawful, and that the defendant would be liable in damages for killing a man lawfully using the sidewalk, unless he showed that he was carried on the sidewalk by his horse, which was restive and uncontrollable. The cases from the courts of our sister states that have been cited are also to the same effect.

The situation, too, at the time this injury was inflicted is of consequence in this case. The sidewalk along which the defendant's servant was leading the horse was fenced off by a wooden railing along the curb, separating the sidewalk from the street, and the plaintiff was endeavoring to get out of the way of the horse by going a little further out towards the railing, when the horse kicked her. There was no testimony offered on the part of the defence, and it may fairly be assumed from the testimony of the plaintiff Mary Healey that if the person leading the horse had looked he might have seen the perilous position in which she was placed by his unlawful use of the sidewalk.

We think the instruction of the trial court on this subject was correct.

Another exception was taken to the admission of evidence. It appeared in the evidence that the plaintiff, a married woman, was carrying on business for herself. She testified that she sold notions of all kinds—soaps, brushes, combs,

needles, pins, cotton, liniments and various other articles—
by peddling them from house to house, and that she earned
in that way a dollar a day; that she had been doing that
business for three or four years.  The defendant's counsel
moved to strike from the record that part of the testimony
of the witness which referred to the loss of her business and
the fact that she was compelled to give it up, on the ground
that that is special damage and is not alleged in the declara-
tion.  The allegation contained in the declaration is that "by
reason of the premises she the said Mary Healey received
severe, painful and permanent injuries to her back, hip and
spine, and otherwise severely and permanently bruising and
injuring her, and also by means of the premises the said
plaintiff Mary Healey became and was sick, sore, lame and
disordered, and so remained and continued for a long space of
time, to wit, from thence up to and until the present time,
during all which time the said plaintiff Mary Healey suffered
and underwent great pain and was hindered and prevented,
and in the future will be hindered and prevented from trans-
acting and attending to her necessary and lawful affairs by
her during all that time to be performed and transacted, to
wit," &c.  We think this allegation in the declaration is suffi-
cient to justify the admission of evidence with respect to the
loss of her business and the fact that she was compelled to give
it up.  The court held that the special damage was sufficiently
alleged in the declaration and refused an order to strike it
from the record.  To this ruling the defendant prayed an
exception.

By the settled law of this state a married woman carrying
on separate business is entitled to have her own earnings.
Section 4 of the Married Women's act is explicit on this sub-
ject.  It enacts "that the wages and earnings of any married
woman, acquired or gained by her after the passing of this
act, in any employment, occupation or trade in which she is
employed, and which she carries on separately from her hus-
band, and all investments of such wages, earnings, money or
property, shall be her sole and separate property, as though
she were a single woman."  *Gen. Stat., p.* 2013.  A per-

sonal injury which disqualifies a married woman from carrying on the business in which she is engaged, manifestly vests in her the right to recover damages sustained by her in respect to her separate business. The impairment of her capacity to perform labor may be considered as an element of the damages, since the husband's right to recover for loss of services does not preclude her right to recover for the loss of her capacity to earn for herself. The distinction is between the effort to award the wife damages for the loss of service to her husband in his household in the discharge of her domestic duties, and the loss of ability to make earnings outside of the household duties and irrespective of the husband, especially where the married woman is engaged in transacting any business on her own account. *Texas and Pacific Railroad Co.* v. *Humble,* 181 *U. S.* 57, 526; *Filer* v. *New York Central Railroad Co.,* 49 *N. Y.* 47; *Brooks* v. *Schwerin,* 54 *Id.* 343; *Blaechinska* v. *Howard Mission,* 130 *Id.* 497. The testimony on the part of the wife, with respect to the loss of her business, and the fact that she was compelled to give it up, was competent.

We find no error on the record, and the judgment should be affirmed.