PETER EHLERS, Appellant, v. JOHN BLUMER and MAGGIE BLUMER, Appellees.

**Fraudulent conveyances:** EXEMPT EARNINGS: TRANSFER TO WIFE. A husband may turn over to his wife all of his exempt earnings for the purpose of defraying the family expenses, and any property she may purchase with the savings from such earnings cannot be subjected to the payment of the husband's debts.

**Wife's separate earnings:** EXEMPTION. Where a husband consents that his wife keep boarders on her own account, the property purchased by her from funds accumulated thereby is not subject to his debts.

*Appeal from Pottawattamie District Court.—* HON. N. W.
MACY, Judge.

THURSDAY, DECEMBER 14, 1905.

ACTION in equity to subject to the payment of a judg-
ment held by the plaintiff against defendant John Blumer
certain real property the legal title of which is in his wife
and codefendant Maggie Blumer. A decree was rendered
for the defendants, from which plaintiff appeals.— *Af-
firmed.*

*S. B. Wadsworth,* for appellant.

*Harl & Tinley,* for appellees.

McCLAIN, J.— As the case is presented to us no ques-
tion is made with reference to the testimony of Maggie
Blumer that in purchasing the real property in question she
used $2,323.53 received by her from her father and his
estate in paying $3,780 for the real estate which she now
owns, the last-named sum being the full purchase price of
the property, less the mortgage thereon, which remains un-
paid. But it is contended for appellant that the difference
between what was received from the father and his estate,
and what was paid for the property came from the hus-
band, John Blumer, and that the property should be sub-
jected to the payment of plaintiff's judgment against him
to this extent.

It is not clear that the sum derived from the father's
estate had not been materially increased by being loaned
at interest, for $600 had been in Maggie Blumer's hands
for 10 years before it was used in the pur-
chase of the real estate. But, however, this
may be, Maggie Blumer augmented her funds
from time to time prior to the purchase of the real estate

1. FRAUDULENT CONVEYANCES: exempt earnings: transfer to wife.

from her husband's earnings as a laborer, which amounted to about $36 per month and were regularly turned over to her by him as received, and from board money received from keeping her brother as a boarder at the rate of $14 per month. From the money received from these sources, Maggie Blumer paid the family expenses, including the expense of her husband's clothing, and as no other source of income appears, we must presume, perhaps, that it was from her husband's earnings, and from this board money, that she accumulated a considerable part of the $1,400 which was added to the sum actually received from her father and his estate in purchasing the real property which she now owns.

But we do not think, even under this concession, the plaintiff is entitled to subject the real property of Maggie Blumer to this extent to the payment of plaintiff's claim against her husband. The husband's earnings were exempt, and he had a right if he saw fit to transfer them to his wife as they were received, free from any liability to the payment of plaintiff's claim. His intention to thus transfer his exempt earnings so that they could not be reached by his creditors would not constitute a fraud, and we think it clear under the evidence this is exactly what he did. He and his wife both testified that his entire earnings were given to his wife from month to month, with the understanding that she should pay the family expenses, and there is no evidence that there was any agreement on her part to return any portion of the earnings not used for that purpose. If, by economy and thrift, she was able to pay the family expenses out of that sum, and accumulate a fund for herself with her husband's entire consent and approval, we see no reason why the property acquired with such fund should be subjected to plaintiff's claim.

But counsel for appellant argues that under the testimony of the defendants, the expenses of the family exceeded the husband's earnings, so that no fund could have

arisen from that source, and the amount of $1,400 must
have been derived from board money, and
that this board money was the property of
the husband as it was not earned by the wife in any
separate business or employment.   No doubt it is true that
where the husband receives board money, there being no
evidence that it was earned by or payable to the wife under
any separate contract or in an independent business, he
does not become indebted to the wife for the money thus
received, and that she cannot, as against the creditors of
her husband, claim an interest in property acquired by him
in part with such board money.   *Hamill v. Henry*, 69 Iowa,
752.   We have also held that if the husband takes a con-
tract for keeping boarders, he may recover in his own name,
and that there is no right of action in favor of the wife,
although she may have performed the labor necessary in
carrying out the contract.   *Miller v. Dickinson County*, 68
Iowa, 102.   But, on the other hand, we think there can be
no controversy under our decisions as to the soundness of
the propositoin that where, by the consent of the husband,
the wife keeps boarders on her own account and receives
the board money and invests the fund thus accumulated in
property in her own name such property is exempt from
any claim on the part of the husband's creditors.   *Gilbert
v. Glenny*, 75 Iowa, 513; *Hoag v. Marlin*, 80 Iowa, 714;
*Carse v. Reticker*, 95 Iowa, 25.

As no interest of defendant John Blumer in the prop-
erty in controversy apparently owned by his wife, Maggie
Blumer, has been established by the evidence, and there is no
showing of any fraud in the transfer of the husband's earn-
ings to the wife of which the plaintiff has ground to com-
plain, we reach the conclusion that the decree of the trial
court is right and it is *affirmed.*

*(Margin note: 2. WIFE'S SEPA-RATE EARNINGS: exemption.)*