# EMMA M. LIBAIRE v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

February 24 1911.

Nos. 16,733—(84).

**Collision at railroad crossing — action by married woman of foreign state — governed by Minnesota law.**

Plaintiff, a resident of New York, was injured by a collision between an automobile in which she was riding and one of defendant's engines at a public crossing in Minnesota. The jury found for plaintiff. It is *held*:

1. Section 5001, R. L. 1905, imposes on a railroad company the duty of causing a bell to be rung or a whistle to be blown as a train approaches a public crossing. Hohl v. Chicago, M. & St. P. Ry. Co., 61 Minn. 321, followed.

2. An action by a married woman for personal injury, brought in the state where the injury occurred, is governed by the laws of such state as to the right of recovery and the damages recoverable, regardless of the place of plaintiff's domicile. Texas & P. Ry. Co. v. Humble, 181 U. S. 57, followed and applied.

3. Where damages to a wife, resulting from defendant's actionable fault, have in no part been caused by the wife's own wrong, two distinct causes of action may accrue — one to her, for the direct injuries to her person and the like; the other to her husband, for the consequential injuries to him, consisting of loss of her services and society, and of the expense to which he may have been put. The wife in this state may sue in her own name for her injuries, which are direct. Mageau v. Great Northern Ry. Co., 103 Minn. 290, followed and applied.

4. Plaintiff, a married woman, was entitled to maintain this action in her own name, and to recover for injuries to her person, including damages for loss of earning capacity as a singer.

[1] Reported in 130 N. W. 8.

Action in the district court for Ramsey county to recover $25,693.-50 for personal injuries. The complaint alleged that on August 19, 1908, plaintiff was riding as a passenger in an automobile upon a public highway intersecting defendant's line of road at Cottagewood station; that she had no control over the movement or speed of the machine and took no part in its operation or management; that while being driven across the track the automobile was struck by defendant's passenger train; that the people on the front seat were instantly killed; that the automobile was overturned and plaintiff pinioned under it, after which the gasolene tank exploded, plaintiff barely escaping being burned to death; that the injuries sustained had permanently affected her health. The negligence alleged was that defendant's employees operating the engine failed to give proper or timely warning of the approach of the train by sounding the whistle or ringing the bell, in operating the train at a high and dangerous rate of speed, in failing to have the brakes and appliances by which the speed of the train was controlled in proper and safe condition; in failing to keep a proper lookout to ascertain whether any person or vehicle was approaching the crossing; and in failing properly to control and regulate the speed of the train, with an allegation that, by pleading these specific negligent acts and omissions, plaintiff did not waive the right to prove other and additional acts and omissions not inconsistent with those pleaded. The answer alleged that the injuries were caused through plaintiff's contributory negligence. The reply was a general denial.

The case was tried before Hallam, J., who at the close of the trial denied defendant's request for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $11,500. Defendant's motion for judgment notwithstanding the verdict was denied, and its motion for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $8,500. From the order denying the motion for judgment and granting a new trial upon condition, defendant appealed. Affirmed.

*Cobb & Wheelwright, John I. Dille, W. H. Bremner, Eugene Bryan* and *George W. Seevers,* for appellant.

The states of Colorado, Maryland, Louisiana, Pennsylvania, North Carolina, Oregon, Washington and Wyoming, have no statutes bearing upon the duty of railroad companies to give signals at highway crossings. The subject is governed by the common law. All of the other states have statutes that make it the duty of the railroad company to see that these signals are given, except Minnesota and New York. States, excepting the last two named, that have penal statutes applicable to engineers, also have civil statutes making it the duty of railroad companies to see that the signals are given. The several statutes mentioned will be found as follows: Alabama: Code 1907, §§ 5473, 5476. Arizona: R. S. 1901, Penal Code, § 355; Civil Code, § 869. Arkansas: Kirby, Digest, St. Ark. 1904, § 6595. California: 4 Deering, An. Pen. Codes St. § 390. Colorado: No statute. Connecticut: G. S. 1902, §§ 3786, 3787. Delaware: Laws 1893, c. 685. Florida: G. S. 1906, §§ 2841, 2842. Georgia: 2 Code 1895, §§ 2222, 2224. Idaho: Rev. Codes 1908, § 2821. Illinois: Hurd, R. S. 1908, p. 1674, par. 68. Indiana: Ind. An. St. Rev. 1908, §§ 2679, 5431. Iowa: Code 1897, § 2072. Kansas: St. Louis v. Payne, 29 Kan. 166; 100 Minn. 309 318. Kentucky: Russell St. 1909, § 5335. Louisiana: No statute. Maryland: No statute. Maine: R. S. 1903, § 70, c. 5, p. 524. Massachusetts: R. L. 1902, § 188, p. 1022, § 268. Michigan: 3 Howell An. St. § 3375, Supp. p. 3289. Mississippi: Code 1906, §§ 4045–4054. Missouri: R. S. 1899, § 1102. Montana: Rev. Codes 1907, § 4289. Nebraska: Comp. St. 1909, § 104, p. 583. Nevada: Comp. Laws 1861–1900, § 1012. New Hampshire: Pub. St. and Session Laws 1901, p. 516, § 6. New Jersey: G. S. 1709–1895, p. 2669. §§ 6, 8. New Mexico: Comp. Codes 1897, § 3859. New York: Cook's Crim. Code, 1909, § 1985. North Carolina: No statute. North Dakota: Rev. Codes 1905, § 4294. Ohio: Bates An. St. 1904, §§ 3336, 3337. Oklahoma: G. S. 1908, § 5942. Oregon: No statute. Pennsylvania: No statute. Rhode Island: Laws 1909, p. 727, §§ 14, 16. South Carolina: Code of Laws 1902, § 2132. South Dakota: 2 An. St. 1116, § 3944. Tennessee: Code 1896, § 1574. Texas: R. S. 1879, art. 4232; 12 S. W. 1121. Utah: Comp. Laws 1907, § 447. Vermont: Pub. St. 1906, §§ 4431–4432. Virginia: Pollard Code, 1904, § 1294d, par. 24, 25. Washington: No statute. West Virginia: Code 1906, § 2358. Wisconsin: St. 1898, §§ 1809a, 1819. Wyoming: No statute.

*Daniel F. Carmichiel* and *Keith, Evans, Thompson & Fairchild,* for respondent.

[JAGGARD, J.] [1]

Plaintiff and respondent was being driven in an automobile across the tracks of defendant and appellant railroad company, on her way to the point of destination. The automobile and the engine collided, resulting in the injuries complained of. The jury returned a verdict for plaintiff of $11,500. The court reduced the verdict to $8,500. This appeal was taken from an order overruling defendant's motion for judgment notwithstanding the verdict or for a new trial.

1. Defendant contends: The trial court erred in instructing the jury that it was defendant's duty to cause the bell to be rung and the whistle to be blown on the train's approach to the crossing, as provided by section 5001 of the Revised Laws of 1905, in addition to its common-law duty on the subject. The instruction given on this point by the trial court was as follows: "Now there is a statute in this state that requires that an engineer, driving a locomotive on a railway, shall ring the bell or sound the whistle upon the locomotive, or cause the same to be rung or sounded, at least eighty rods from a road crossing on the same level, and to continue the ringing of the bell or sounding such whistle at intervals until such locomotive and the train attached thereto shall completely cross the road. I instruct you, gentlemen, that this statute is not a requirement that the engineer shall both keep sounding the whistle and ringing the bell, but it is a requirement that he shall do one or the other, or see that it is done; that is, to continue ringing the bell or sounding the whistle at intervals for the space of at least eighty rods before reaching the railroad crossing. Failure on the part of the engineer to observe this statute—that is, to ring the bell or sound the whistle at intervals, or see that it is done—is competent evidence of negligence on his part; not conclusive evidence of negligence, but it is to be considered in connection with other circumstances in the case."

One essential difference between the common-law duty and the statute duty is that under the statute the bell must be rung or the

---

[1] See per curiam order on page 524.

whistle sounded at least eighty rods from the crossing. The common-law rule contains no such precise definition of the place where the signals are to be given. The defendant insists that the statute imposed the duty, not upon the defendant company, but upon its engineer, who is not a party to this proceeding; that an action may lie against the master for a breach of the master's duty by the servant, but not against the master for a breach by the servant of the servant's duty to the person injured.

This question of statutory construction is not, however, a new one in this state. On the contrary, that statute has been expressly construed. For example, in Hohl v. Chicago, M. & St. P. Ry. Co., 61 Minn. 321, 63 N. W. 742, 52 Am. St. 598, Start, C. J., said: "It was the duty of the engineer in charge of the locomotive in this case to give the signals at the crossing or cause them to be given. A failure to do so is a misdemeanor. G. S. 1894, § 6637. It is not the province of the court to ingraft upon this statute any limitations not necessarily implied from the language used, and, inasmuch as the giving of such signals has a tendency in some cases to frighten animals from the railway track, we must presume that this was one of the results intended to be secured by the enactment of the law; hence an omission to comply with the statute in this case was evidence of negligence on the part of the defendant, but whether such omission was the cause of the accident, or not, was a question for the jury."

Good reason for the imposition of this duty upon the master is to be found in the general principle that the master may fairly be held to be under obligation to see that his servants do not violate the criminal law in the operation of its equipment and that legislative precautions for public safety should be obeyed by its employees. Respondent properly insists that "the only thing which differentiates that case from the case at bar is that in the one a colt was killed and in the other a woman was badly injured." It is true the specific point which defendant makes in this case was not expressly referred to nor considered by the trial court. None the less an express construction was placed upon this statute. The legislature has not seen fit to change that interpretation of its intention. See Everett

v. Great Northern Ry. Co., 100 Minn. 309, 111 N. W. 281, 9 L.R.A. (N.S.) 703; Hendrickson v. Great Northern Ry. Co., 49 Minn. 245, 51 N. W. 1044, 16 L.R.A. 261, 32 Am. St. 540; Judson v. Great Northern Ry. Co., 63 Minn. 248, 65 N. W. 447; Czech v. Great Northern Ry. Co., 68 Minn. 38, 70 N. W. 791, 38 L.R.A. 302, 64 Am. St. 452; Croft v. Chicago Great Western Ry. Co., 72 Minn. 47, 74 N. W. 898, 80 N. W. 628.

2. It is also urged as error: The instructions of the trial court that plaintiff's loss of services as a singer should be taken into consideration in estimating the damages she sustained, in the event of a verdict for plaintiff. It appeared in the complaint that plaintiff's home was in New York, but the pleadings were entirely silent as to any issue concerning the effect of that fact upon plaintiff's right to recover for her injuries, because under the law of New York the husband might be alone entitled to his wife's services, and he alone might be entitled to recover for loss thereof. The law is, however, well settled that an action by a married woman for personal injury, brought in the state where the injury occurred, is governed by the laws of such state as to the right of recovery and the damages recoverable, regardless of the place of plaintiff's domicile. Texas & P. Ry. Co. v. Humble, 97 Fed. 837, 38 C. C. A. 502; affirmed 181 U. S. 57, 21 Sup. Ct. 526, 45 L. ed. 747.

Defendant seeks to distinguish this from the case at bar, because there, "under the Arkansas statute, a cause of action for damages for injury to the person, character, and property is given to married women by statute. In this state no such cause of action is given. The statute is silent upon the subject."

3. This proposition as to the status of a married woman forms a separate proposition of defendant's brief. That proposition is wholly a mistaken one. The statutes of this state are extremely liberal in their recognition of the right of a married woman to her separate existence, ownership of property, ability to contract, and right to her earnings, and capacity to sue or be sued in her own name. There are, indeed, border line cases. The law has liberally upheld her right to recover even for boarding which she has furnished to third persons, although this approaches closely to the line of the domestic service

which she owes to her husband. It is entirely reasonable in such close cases that the law should require some agreement between the husband and the wife that she should have these earnings as her own property. See Riley v. Mitchell, 36 Minn. 3, 29 N. W. 588; Bodkin v. Kerr, 97 Minn. 301, 107 N. W. 137; Skoglund v. Minneapolis Street Ry. Co., 45 Minn. 330, 47 N. W. 1071, 11 L.R.A. 222, 22 Am. St. 733; Belyea v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 61 Minn. 224, 63 N. W. 627. It is well settled, however, in this state, that where damages to a wife, resulting from defendant's actionable fault, have in no part been caused by the wife's own wrong, two distinct causes of action may accrue—one to her, for the direct injuries to her person and the like; the other to her husband, for the consequential injuries to him, consisting of loss of her services and society, and of expense to which he may have been put, and the like. The wife is allowed to sue in her own name for her injuries which are direct. Mageau v. Great Northern Ry. Co., 103 Minn. 290, 291, 115 N. W. 651, 946, 15 L.R.A.(N.S.) 511.

Under section 3606, R. L. 1905, "any married woman during coverture may receive, acquire, and enjoy * * * all avails of her contracts and industry free from the control of her husband * * * as fully as if she were unmarried." To this provision the court has given and should give a liberal construction. The words "all avails of her contracts and industry" contain no express restriction, and the juxtaposition of no preceding language limits them. On the face of this complaint nothing appears to give rise to any presumption or suggestion that under the law of this state the husband had any interest in the earnings of the wife as a singer. If the husband had any interest in what the wife earned by singing, the defendant should have asserted that matter by way of affirmative defense.

See also in connection with the subject of the status of the wife, R. L. 1905, § 4056; 2 Dunnell, Minn. Digest, "Husband and Wife," §§ 4258, 4289, 4293, 4296. Cf. section 4271, and Brooks v. Schwerin, 54 N. Y. 343; Harmon v. Old Colony, 165 Mass. 100, 42 N. E. 505, 30 L.R.A. 658, 52 Am. St. 499; Citizens v. Twiname, 121 Ind. 375, 23 N. E. 159, 7 L.R.A. 352; Healey v. Ballantine,

66 N. J. L. 339, 49 Atl. 511; Ehlers v. Blumer, 129 Iowa, 168, 105 N. W. 406.

PER CURIAM.

For the reasons given in the foregoing opinion, prepared by the late Justice JAGGARD, in accordance with conclusions reached by the court, the order appealed from is affirmed.

SIMPSON, J., took no part.